## HEALEY and WHITING *vs.* PHILIP ALSTON.

An equitable title is always complete when a court of chancery will compel the party holding the legal title to convey to the person having the equitable title, or will restrain such party from asserting rights under the legal title, detrimental to the equitable estate.

The person holding the legal title in such a case will be treated as a trustee for him having the equitable interest, and will be held accountable in a court of chancery.

In his application to redeem the land, G. cannot avail himself of the superior rights which belong to a judgment creditor over the equities of the appellants.

Between creditors, one may have an equity or legal right superior to another, but this does not weaken or impair the equities which both may assert against a common debtor or trustee. He is bound to perform his obligations to all; but if he is unable to do so, then creditors may claim their rights of prior satisfaction.

The only right A. can claim is, that the legal title which H. and W. acquired by the sheriff's deed shall be vested in him.

But if this title were vested in A., it would not confer on him the rights incident to such a title, but would revive the trust which existed against G. before the execution sale.

The equitable and legal title uniting in the same person, the former is merged in the legal title, and the trust is executed.

A court of equity would at any time have enforced an execution of the trust for H. and W., if required.

On appeal from the northern district chancery court at Holly Springs; Hon. Henry Dickinson, vice-chancellor.

Some time in the year 1835 or 1836, Angus Gillis purchased of Edward Orne, agent of Healey and Whiting, who were trustees of the Boston and Mississippi Cotton Land Company, section (12), township (7), range (7), west of the basis meridian, Chickasaw cession, for the sum of four thousand dollars, one third of which was paid in cash, and the balance secured by notes payable in one and two years, with interest from date at the rate of eight per cent. per annum, and Gillis receiving the bond of said Healey and Whiting, conditioned to make title to said land when the purchase-money was paid. Some

Healey et al. *v.* Alston.

time after the purchase, Gillis applied to said Orne for a deed to the north half of the north-west quarter of said section, and Orne, deeming the remainder of the land a sufficient security for the balance of the purchase-money, executed to Gillis a deed as requested. Suit was brought to the December term, 1842, of the federal court at Pontotoc, upon the notes of Gillis, given for the balance of the purchase-money of said land. After suit had been instituted against him, Gillis met with the agent of Healey and Whiting, and proposed compromising the suit against him, by surrendering the land for the purchase-money, agreeing to lose the payment which he had made at the time of the purchase. The compromise was made, Gillis giving up the title-bond of Healey and Whiting, and indorsing upon the same a full release of all his right, title, and interest to the land described in said bond, to said Healey and Whiting, and agreeing to pay the lawyer's fees in said suit. Orne, the agent of Healey and Whiting, on his part agreeing not to interfere with some three and a half acres of the land, which Gillis had given for a school or church, together with an unexpired lease upon some other portion of the land. Gillis denies that he intended to reconvey the whole of the land by his indorsement upon the bond, but that he intended to reserve that portion to which he had received a deed. This, however, is denied, and fully explained by the depositions of Messrs. Stearns and Orne. After the arrangement just referred to was consummated, various means were used to induce Gillis to reconvey, by deed, the land to which he had the legal title, in accordance with the letter and spirit of the compromise; this he refused to do. Healey and Whiting caused an execution to issue against Gillis, in favor of the Northern Bank of Mississippi, to be levied upon said land; and the same was sold on the 7th day of June, 1847, when said Healey and Whiting became the purchasers at the sum of $205. Shortly after this Gillis sold his interest, the right of redemption, to Alston, and executed to him for the same a deed in fee-simple. Alston then applied to Mr. Stearns, as the agent and attorney of Healey and Whiting, to redeem the land, representing himself as a *bonâ fide* creditor of Gillis. Mr. S. refused to permit him

to redeem, and assigned as a reason for his refusal, that he (Alston) was not entitled to the character which he had assumed, and he offered no proof to establish his claim. After his failure, Gillis made application to Mr. S. to redeem the land in his own right, and was refused, upon the ground that he had no right. Alston and Gillis also applied to John R. McCarroll, the sheriff of Marshall county, to redeem the land, who refused to permit him to do so. Alston then filed this bill in chancery.

*Thomas W. Harris, Jr.,* for appellants, filed an elaborate brief.

*D. C. Glenn* argued the case on the same side.

*J. W. Clapp,* for appellee, filed a labored written argument.

Mr. Justice FISHER delivered the opinion of the court.

The appellee filed his bill in the vice-chancery court at Holly Springs, to redeem a tract of land, sold by the sheriff of Panola county, under an execution against one Angus Gillis, and purchased by the appellants.

Since this purchase, the appellee has purchased the right of Gillis in the land, which being only his right to redeem, is but a chose in action, and, therefore, liable to all equities in the hands of the assignee, which could be enforced against the assignor, Gillis.

The defence set up by the answer, and sustained by the exhibits and proof of the appellants is, that Gillis, at the time of the sale, held the legal title to the land, with the equitable title in the appellants. An equitable title is always complete when a court of chancery will compel the party holding the legal title to convey to the person having the equitable title, or will restrain such party from asserting rights under the legal title detrimental to the equitable title. In such case, the person holding the legal title is treated as a trustee for the person having the equity, and in this character will be held accountable in a court of chancery. The facts of this case clearly

establish the trust against Gillis, and we have already seen that his assignee of the right to redeem can occupy no better attitude than he does.

It may be true that the judgment creditors of Gillis would not be affected by the equities of the appellants. But this question, if important at all in this controversy, is in favor of the appellants, who by their purchase acquired not only the legal title of the judgment debtor, but the rights of the judgment creditor, under whose execution the land was sold. It cannot be contended that Gillis, in his application to redeem, can avail himself of the superior rights of the judgment creditor, over the equities of the appellants. As between creditors, one may have an equity or legal right superior to another; but this does not in the least weaken or impair the equities which both may assert against a common debtor or trustee. He is bound in law to perform his obligations to all; but if he is unable to do so, then creditors may claim to stand upon their rights to prior satisfaction. But, as already remarked, the rights of the judgment creditor passed to the purchasers at the execution sale; and no contest between creditors can therefore arise in this action.

The only right which the complainant can claim is, that the legal title which the appellants acquired by the sheriff's deed, shall be vested in him. If a court of equity would not permit him to enjoy rights under this title prejudicial to the appellants, it will not require them to convey it. It will only vest the legal title in a person, when he will be allowed, according to the principles of equity, to enjoy rights incident to such title. Here, if the title were vested in complainant, it would not confer on him the rights incident to a legal title, but would only revive the trust which existed against Gillis before the execution sale. As it now stands, the legal and equitable title uniting in the same persons, the latter is merged in the legal title, and consequently the trust is executed. The defendants have only accomplished for themselves that which a court of equity would have enforced at any time, if necessary, — an execution of the trust.

Under the view which we have taken of the several questions, the decree is erroneous, and should be reversed.

Decree reversed, and bill dismissed.